**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TIFFANIE TEDESCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO.: 2:21-CV-199** |
| | ) | |
| **VS.** | ) | **JUDGE: LANCE M. AFRICK** |
| | ) | |
| **PEARSON EDUCATION, INC., and** | ) | **MAGISTRATE: DONNA PHILLIPS** |
| **XYZ INSURANCE COMPANIES** | ) | **CURRAULT** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**
**<u>PLAINTIFF'S COMPLAINT</u>**

## **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. FACTS ..................................................................................................................... 2

    A. Pearson has attached documents referenced in Plaintiff's Complaint as exhibits to this Motion because they are central to the claims. ................................................... 2

    B. Pearson hired Tedesco, and she excelled in sales. ............................................. 2

    C. Tedesco's father died by suicide and Tedesco struggled with grief. .................... 3

    D. Tedesco and Bronson met with clients on April 3-4, 2019. ............................... 4

    E. Tedesco applied for and received FMLA leave and contacted Human Resources. ............. 5

    F. While Tedesco was on leave, Pearson restructured, but did not lay-off Tedesco and granted her a performance award. .......................................................................................... 6

    G. Plaintiff filed a formal grievance and Pearson formally investigated. ................ 6

    H. Plaintiff took another leave beginning October 1, 2019 and never returned to work. .......... 7

    I. Tedesco filed her first EEOC Charge against Pearson in April 2020. ................. 8

    J. Tedesco transitioned to LTD leave and Pearson attempted the interactive process, but Tedesco refused to participate. ............................................................................. 8

    K. Tedesco filed a second EEOC Charge in August 2020. ................................... 10

    L. Plaintiff's remaining assertions have no connection to her disability. ............... 11

    M. Plaintiff filed a Complaint on January 31, 2021. ........................................... 11

III. LEGAL STANDARD FOR A MOTION TO DISMISS ....................................... 12

IV. ARGUMENT ....................................................................................................... 13

    A. Plaintiff was not a "qualified individual" as she has not worked for two years, and therefore cannot state a claim under the ADA. ..................................................... 13

        1. Plaintiff was not a qualified employee because she could not perform the essential functions of her job. ................................................................................... 16

        2. Plaintiff refused to engage in the interactive process. ................................. 17

        3. Plaintiff's ADA retaliation claim fails because her termination was based on her multi-year leave, which Pearson was not required to accommodate. .................. 17

        4. Plaintiff's continuous leave and lack of return date were legitimate, non-discriminatory reasons for her termination. ................................................ 18

    B. Plaintiff's LEDL claims also fail on the same grounds. ................................... 19

    C. Pearson is not in possession of any of Tedesco's private genetic information, and her claims under GINA fail. .................................................................................... 20

    D. Plaintiff was an at-will employee and can show no contract to support a claim for violation of the implied covenant of good faith and fair dealing. ..................................... 20

V. CONCLUSION ...................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Autozoners, Inc.*,
  No. 98-cv-2336, 1999 U.S. Dist. LEXIS 14999 (E.D. La. Sept. 22, 1999)............................20

*Aguillard v. La. College*,
  824 F. App'x 248 (5th Cir. 2020) ...........................................................................................18

*Amsel v. Tex. Water Dev. Bd.*,
  464 F. App'x 395 (5th Cir. 2012) ....................................................................................16, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................12, 13

*Barton v. Checkers Drive-In Rests., Inc.*,
  No. 11-186, 2011 U.S. Dist. LEXIS 32251 (E.D. La. March 28, 2011)..................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................12, 13

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
  497 F.3d 546 (5th Cir. 2007) ................................................................................................13

*Clark Cty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)...............................................................................................................18

*Credeur v. Louisiana*,
  860 F.3d 785 (5th Cir. 2017) ................................................................................................16

*Delaval v. PTech Drilling Tubulars, L.L.C.*,
  824 F.3d 476 (5th Cir. 2016) ........................................................................................15, 17

*Feist v. Louisiana*,
  730 F.3d 450 (5th Cir. 2013) ........................................................................................15, 18

*Gowesky v. Singing River Hosp. Sys.*,
  321 F.3d 503 (5th Cir. 2003) ................................................................................................15

*Griffin v. UPS*,
  661 F.3d 216 (5th Cir. 2011) ................................................................................................15

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ................................................................................................15

*Hypes v. First Commerce Corp.*,
    134 F.3d 721 (5th Cir. 1998) ................................................................16

*Lee v. Constar, Inc.*,
    921 So.2d 1240 (La. App. 5th Cir. 2006) ............................................19

*Lee v. Entergy Operations*,
    No. 93-0038, 1994 U.S. Dist. LEXIS 13510 (E.D. La. Sept. 19, 1994)................................20

*Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*,
    456 F. App'x 336 (5th Cir. 2011) ..........................................................2

*McCoy v. City of Shreveport*,
    492 F.3d 551 (5th Cir. 2007) ................................................................17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................14

*O'Neal v. Ferguson Constr. Co.*,
    237 F.3d 1248 (10th Cir. 2001) ............................................................18

*Ortiz v. City of San Antonio Fire Dep't*,
    806 F.3d 822 (5th Cir. 2015) ................................................................20

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)................................................................................14

*Sutherland v. Edison Chouest Offshore, Inc.*,
    No. 19-cv-414, 2020 U.S. Dist. LEXIS 165158 (E.D. La. Sept. 10, 2020)............................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2008)................................................................................2

*Trautman v. Time Warner Cable Tex., L.L.C.*,
    756 F. App'x 421 (5th Cir. 2018) ..............................................15, 17

*Tribble v. Ouachita Par. Police Jury*,
    939 F. Supp. 2d 626 (W.D. La. 2013)..................................................19

*Weber v. BNSF Ry. Co.*,
    No. 20-10295, 2021 U.S. App. LEXIS 5547 (5th Cir. Feb. 24, 2021) ................................16

**Statutes**

42 U.S.C. § 12111(8) ................................................................................16

42 U.S.C. § 12112(a) ................................................................................14

42 U.S.C. § 12112(b)(5)(A) ......................................................................15

**Other Authorities**

EEOC Fact Sheet, Work At Home/Telework as a Reasonable Accommodation
    (Oct. 27, 2005), http://www.eeoc.gov/facts/telework.html.) ...................................................17

Fed. R. Civ. P. 12(b)(6)...................................................................................................... *passim*

Fed. R. Civ. P. 56 ...............................................................................................................2

## I.     INTRODUCTION

Plaintiff, Tiffanie Tedesco ("Tedesco" or "Plaintiff"), brings this action against Pearson Education, Inc. ("Pearson" or "Defendant") for violation of rights under the Genetic Information Nondiscrimination Act ("GINA"), American with Disabilities Act ("ADA") and its state analog under the Louisiana Employment Discrimination Law (the "LEDL"), and breach of contract. Even on the face of her Complaint, Plaintiff has not alleged any violation of these laws or any other. When the chronology of events is read closely and stripped of conclusory statements, Plaintiff's Complaint describes a compassionate, flexible, caring response by every employee of Pearson as Plaintiff struggled with depression and PTSD after her father's death, for which she began treatment before any alleged actions by Pearson. Plaintiff's colleagues checked in on her well-being, offered condolences, spoke with her when she seemed to be struggling, shared their own experiences of grief and their journeys through healing. Pearson offered her leave and granted it upon her request and was respectful of her leave when she took it. In addition to full FMLA leave rights and vacation pay, Tedesco has also been receiving short-term and long-term disability benefits continuously since her leave began. It is difficult to imagine what more Plaintiff could have asked of any employer in response to a family member's death.

Plaintiff's apparent struggles with her mental health are tragic, but they have nothing to do with her employment. While Plaintiff was recently terminated, her termination only came after she had been out on leave for nearly a year, indicated her leave would continue at least through April 2022, and her psychologist notified Pearson that it could not contact her, even to engage in the interactive process of discussing potential accommodations to allow her to return. For the reasons described more fully below and in the attached exhibits, Pearson therefore asserts this Motion to Dismiss on grounds that Plaintiff's January 31, 2021, Complaint should be dismissed in its entirety under Rule 12(b)(6) because the allegations contained therein are conclusory, and Plaintiff fails to

state any claims upon which relief may be granted. (*See* Complaint, Dkt. 9-2.)[1] Defendant respectfully requests that this Court grant its motion and dismiss this matter with prejudice.

II.     **FACTS**

   A.     **Pearson has attached documents referenced in Plaintiff's Complaint as exhibits to this Motion because they are central to the claims.**

Plaintiff's Complaint referenced numerous written documents which she did not attach. Pearson has attached the referenced documents, and the Court may consider them without converting the motion to a Rule 56 Motion for Summary Judgment because they are "(1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340-341 (5th Cir. 2011); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). While Defendant contests the accuracy and/or characterization of nearly all of the allegations contained in Plaintiff's Complaint, pursuant to the 12(b)(6) standard, Defendant will presume that they are true for the purposes of this motion, *except* where the written documents plainly contradict Plaintiff's allegations quoting or characterizing them.

   B.     **Pearson hired Tedesco, and she excelled in sales.**

Pearson hired Tedesco on or about March 11, 2014, as a Sales Representative in Pearson's Higher Education division. (Dkt. 9-2 at ¶ 12.) Initially, Plaintiff reported to District Manager Julie

---

[1] Plaintiff's original Complaint, filed January 31, 2021, contained references to one of Pearson's clients by name, as well as naming a Pearson employee who gave Tedesco condolences and then privately shared her own experiences with a family history of suicide. In her original Complaint therefore, Tedesco did exactly what she has sued Pearson for doing – she publicized the sensitive divulgence of a colleague that was told to her in a private conversation. Upon Defendant's request, Plaintiff agreed to remove these references and replace them with pseudonyms, and she withdrew her original Complaint and filed her Substituted Complaint on April 6, 2021 (Dkt. 9-2).

Morel. (*Id*. at ¶ 13.) After a company reorganization in June 2018, Plaintiff began reporting to District Manager Ty Olden, who in turn reported to Vice President of Sales Jeanne Bronson. (*Id*. at ¶ 15.) Tedesco was an extremely successful salesperson and was highly regarded by Pearson for her excellent performance. (*Id*. at ¶¶ 16-23.)

### C.   Tedesco's father died by suicide and Tedesco struggled with grief.

On December 31, 2018, Tedesco's father died by suicide. (*Id*. at ¶ 24.) Tedesco was, justifiably, extremely upset by this tragedy. (*Id*. at ¶ 25.) The next day she told Olden that her father had died, and Olden asked Plaintiff to stay in touch regarding the burial. (*Id*. at ¶ 26.) Plaintiff immediately began seeking treatment "for the mental trauma related to her father's unexpected and violent death" and was diagnosed with major depressive disorder, post-traumatic stress disorder and suicidal ideation. (*Id*. at ¶ 33.)

On January 14, 2019, Olden asked Plaintiff to take a certification test, and Plaintiff clarified that her father had died by suicide and asked if she could skip the test. (*Id*. at ¶ 27-28.) Olden said he would speak with Bronson about excusing Plaintiff from the test, and Plaintiff consented to Olden speaking with Bronson, "but clarified that the details were '[her] story to tell.'" (*Id*. at ¶ 30.) Plaintiff alleged that Olden shared with Bronson Plaintiff's "private genetic information regarding [her] family history of suicide and [her] genetic predisposition to mental health issues." (*Id*. at ¶ 32.) Notably, Plaintiff did not allege what specific genetic information was shared, nor did she explain any specific facts to show that Olden clearly violated her permissions. In fact, in her formal grievance filed nine months later, Plaintiff asserted that she gave Olden permission to share everything with Bronson, and indicated no limitations. (Ex. A, Plaintiff's formal grievance, p. 1, hereinafter "September Grievance.")

It was not until two months later, in mid-March 2019, Plaintiff allegedly learned that her great-grandmother had also died from suicide and was diagnosed as being "manic." (Dkt. 9-2 at ¶

34.) Plaintiff has not alleged in her Complaint that she shared any information about her great-grandmother with anyone at Pearson at any point.

Plaintiff alleged that Bronson shared the details of her father's suicide with Pearson Managing Director R.B. On March 18, 2019, R.B. called Plaintiff "to give condolences," and shared her own story of suicide and grief, causing Plaintiff to open up with her own story. (Dkt. 9-2 at ¶ 39.)

**D.      Tedesco and Bronson met with clients on April 3-4, 2019.**

The events that appear to have largely triggered Plaintiff's problems with Pearson occurred between Plaintiff and Bronson on April 3-4, 2019 (the "April Client Meetings"). Plaintiff alleged that on April 3, Bronson suggested that Plaintiff "update her resume because layoffs were coming," causing Plaintiff to lose sleep for fear of losing her job. (*Id.* at ¶¶ 40-41.) As noted in Plaintiff's September Grievance filed five months later, as well as her EEOC Charge filed April 22, 2020, Bronson also made this same suggestion to Samantha McKay and Ashton Hurst, two colleagues who have not made any allegations of disability, or genetic information discrimination. (Ex. A, p. 1, #2; p. 2 #7; *see also* Ex. B, hereinafter the "April EEOC Charge".)

The next day, after working together through the morning, Bronson allegedly told Tedesco twice that she needed "to get some help" and suggested once that Plaintiff was acting manic. (Dkt. 9-2 at ¶¶ 42-44.) In her September Grievance, Plaintiff characterized these comments as "beyond the reasonable bounds of human decency." (Ex. A, p. 3.) Plaintiff stated that Bronson's comment about Plaintiff acting "manic" that morning constituted a "psychological diagnostic" and that scarred her and crushed her dreams. (*Id.* p. 4.)

Bronson also allegedly admitted during this trip that she shared Plaintiff's father's suicide with R.B. and Morel. (Dkt. 9-2 at ¶¶ 45-46.) Plaintiff was close with Morel and she "already knew some details of Tedesco's personal life," and in a later conversation Morel allegedly asked Tedesco

4

about her medications, said it "is manic behavior to cry" and suggested that Plaintiff take medical leave. (*Id*. at ¶¶ 48-50.)

    **E.**    **Tedesco applied for and received FMLA leave and contacted Human Resources.**

    On April 7, 2019, just a few days after the April Client Meetings, Tedesco filed for FMLA leave, which was granted. (*Id*. at ¶ 51.) That same day R.B. advised Tedesco to contact Kelly Rippolone, Pearson's Vice President of Human Resources, regarding her issues with Bronson at the April Client Meetings. (*Id*. at ¶ 52.) Plaintiff reported the incident to Rippolone on April 8, 2019, and they corresponded through April 10. (*Id*. at ¶¶ 53, 55.) In her Complaint, Plaintiff alleged that Rippolone was "unhelpful, and her replies were not responsive to Tedesco's requests." (*Id*. at ¶ 55.) However, the actual email exchange referred to contradicts this characterization. (Ex. C, April 2019 emails.) On April 10 at 11:07 a.m., Plaintiff wrote "I appreciate you listening to my story Monday however, I would like to request to lodge a formal grievance . . . . Thank you for all you do. I really appreciate it." Later that same day, at 2:50 pm, Rippolone responded "I'm your point of contact to file a complaint, but if you feel that you need to go to someone else, I can point you to another person . . . . Let me know what you would like to do, continue speaking to me or you would prefer another person. It's whatever you're comfortable in doing." A few minutes later, Plaintiff responded again sating she was "delighted to be speaking with you" and that she appreciated her help. Again, Rippolone responded within minutes, giving Plaintiff options and stating "it's whatever you want." (*Id.*) Despite these exchanges and Rippolone's willingness to assist, Plaintiff did not file the grievance regarding Bronson until over five months later, on September 14, 2019. (Dkt. 9-2 at ¶ 73.)

**F.    While Tedesco was on leave, Pearson restructured, but did not lay-off Tedesco and granted her a performance award.**

Plaintiff alleged that Pearson engaged in restructuring in June 2019. (*Id.* at ¶ 63.) Plaintiff was on FMLA leave at the time, but was not terminated and in fact received an award as "Evidence Field Champion" on July 1, 2019. (*Id.* at ¶ 64.) Plaintiff returned from her first leave on July 15, 2019. (*Id.* at ¶ 67.) Despite being granted this award just two weeks before she returned to work, Plaintiff alleged that when she returned to work, her superiors "treated her as if she were untrustworthy and incompetent to perform her job, and demoted her from the leadership and management track," although she does not give any specifics except to allege that Olden made a single comment about a client that he "didn't want to fucking hear it." (*Id.* at ¶¶ 68-69.) Plaintiff also complained about an email from Olden on September 13, 2019, where he suggested that she "put the computer down tomorrow and go sit in your garden." (*Id.* at ¶¶ 71-72.) That September 13 email, attached hereto as Exhibit D, says nothing about Tedesco's father's suicide or her prior medical leave. Rather, Olden states "I don't want you working until midnight every night and all weekend," and "I'm only saying this because I want to keep you from burning out on Pearson, not because I have a problem with the way you do things. Have a great weekend. Put the computer down tomorrow and go sit in your garden!" (Ex. D, Sept. 13, 2019 emails.) Tedesco inaccurately described these two encounters with Olden as a "pattern of behavior" by "management" that was "discriminatory." (Dkt. 9-2 at ¶ 70.)

**G.    Plaintiff filed a formal grievance and Pearson formally investigated.**

On September 14, 2019, Plaintiff filed her September Grievance through Pearson's online portal. (*Id.* at ¶ 73; *see also* Ex. A.) The 4,405-word September Grievance largely focused on the April Client Meetings, and Plaintiff's issue with Bronson referencing her behavior as "manic." (Ex. A.) Plaintiff alleged in her Complaint that in addition to the September Grievance, from

September to November 2019, she continued to report frequent incidents of harassment, retaliation and hostile work environment to Pearson's Director of Employee Relations, Roger Grunwald, although she does not list any details. She also alleges that she requested that she not be "forced to take leave"; and that she be "placed in a line of reporting wherein she could work free from the ongoing hostility, harassment, and questioning regarding her mental condition and competency." (Dkt. 9-2 at ¶¶ 76-77.) However, Plaintiff also continued to request leave and received it. (*See, e.g., id.* at ¶¶ 87-92.)

### H.   Plaintiff took another leave beginning October 1, 2019 and never returned to work.

Two weeks after filing the September Grievance, Plaintiff submitted a request to take vacation beginning October 1, 2019. (*Id.* at ¶¶ 87, 90.) While on that extended vacation, on October 18, Tedesco filed for short term disability ("STD"), and her STD benefits began on November 4, 2019. (*Id.* at ¶¶ 91-92.) She has not returned to work for Pearson since that time. While on STD leave, Plaintiff emailed Grunwald on November 20, 2019 regarding her complaint against Bronson, and he responded by saying that Plaintiff "should not be working while on leave." (*Id.* at ¶ 93.) Plaintiff indicated in her Complaint that Grunwald's email "leveled criticism" at her and suggested her "mental condition was questionable." (*Id.*) However, as the actual email states, Grunwald assured Tedesco that he had posted her email in her September Grievance report, and that he wished her well, but that "because you are currently taking time off to focus on your health, and because we encourage employees to fully separate themselves from work while on leave of absence, I will suspend any response to your specific requests below until you return to work." (Ex. E, Nov. 2019 emails.[2])

---

[2] Defendant has redacted much of Ms. Tedesco's November 20, 2019 email sent at 6:25 pm, as she made requests within the body of the email that it remain confidential. While Defendant takes the position that none of Tedesco's

**I.      Tedesco filed her first EEOC Charge against Pearson in April 2020.**

On April 23, 2020, Tedesco filed her first EEOC charge, alleging retaliation, harassment, and discrimination on the basis of her disability and her genetic information. (Dkt. 9-2 at ¶ 96, Ex. B.) Like Plaintiff's September Grievance and allegations in her Complaint, Plaintiff's April EEOC Charge focused largely on the April Client Meetings with Bronson. Plaintiff in her Charge mentioned again the fact that Bronson told her and McKay about potential upcoming layoffs, that Bronson told her she was "acting manic" and needed to get help. (Ex. B, p. 2.)

The parties attempted mediation but failed to settle the April EEOC Charge. (*Id*. at ¶ 99-100.)

**J.      Tedesco transitioned to LTD leave and Pearson attempted the interactive process, but Tedesco refused to participate.**

After Plaintiff had been on STD for six months, and after she filed the April EEOC Charge, on May 5, 2020, Plaintiff was automatically placed on long term disability ("LTD") per Pearson's policy. Her leave was approved by Pearson's benefit provider through April 27, 2022. (*Id*. at ¶ 98.)

Two months later, after Plaintiff had been out on her second period of leave for over nine months, Rippolone contacted her on July 22, 2020 to check her status and any requests for accommodations that would allow her to return. (*Id*. at ¶ 101.) The letter from Rippolone noted that Tedesco "ha[s] not returned to work in any capacity since October 15, 2019," and that Tedesco may have a condition covered by the ADA. (Ex. F, July 22, 2020 from Pearson to Plaintiff.) Pearson asked Tedesco to engage in the interactive process by contacting Pearson to discuss whether she was able to perform the essential functions of her job at that time. As was Rippolone's

---

numerous communications with Pearson regarding the facts surrounding her allegations are confidential given her Complaint has been publicly filed, in an abundance of caution Defendant has redacted much of this email's contents.

practice, the letter also offered to allow Tedesco to speak to another HR representative if Tedesco was uncomfortable with Rippolone. (*Id.*)

Plaintiff responded to Rippolone's letter via email on July 30, indicating that her estimated return to work date was, at earliest, April 28, 2022. (Dkt. 9-2 at ¶ 104; Ex. G, July 30, 2020 email from Plaintiff. [3]) As the email chain reflects, Rippolone had sent the July 23, 2020 letter seeking to engage the interactive process with a cover email stating "Hope this email finds you safe despite the pandemic hitting the country. Please see the attached letter and if you have any questions, we can set up a meeting." (Ex. G.) As usual, Rippolone offered to allow Tedesco to work with another HR person if she wished. Tedesco responded to Rippolone's email copying seventeen people, including her lawyers, Pearson's outside counsel, Pearson's inside counsel, and numerous Pearson employees including Pearson's Chief Executive Officer and Chief Human Resources Officer. (*Id.*) Pearson's response attached a screenshot of her disability benefits portal, apparently indicating her return to work was estimated to be April 28, 2022. (*Id.*) Shortly thereafter, Plaintiff's treating psychologist, Dr. Suzanne Klenck, PhD, sent correspondence to Pearson on July 31, 2020. (Dkt. 9-2 at ¶ 109.) Although Plaintiff's Complaint alleged that the letter "reported that Ms. Tedesco was disabled at that time and that returning to a hostile work environment would negatively affect Ms. Tedesco's recovery," the actual letter stated "Tedesco does not have a return to work date at this time. Please be advised and understand that it is important that you not contact my client in the future for any reason, taking into account her mental health and disability status." (*Id.*; Ex. H, July 31, 2020 letter from Dr. Klenck.)

After review of the correspondence from Plaintiff and Dr. Klenck, on August 5, 2020 Pearson's counsel notified Plaintiff's attorneys that she had been terminated due to her inability to

---

[3] Although Plaintiff alleges in her Complaint that this response was dated July 28, the email referenced shows that the date was actually July 30, 2020.

return to work for the foreseeable future. (Dkt. 9-2 at ¶ 110; *see also* Ex. I, Aug. 5, 2020 email from Susan Fahey Desmond; Ex. J, Separation letter.) The email specified that Pearson had "no choice but to terminate [Plaintiff's] employment" because it could not "hold her position open indefinitely" and Pearson sent the termination letter through counsel to Plaintiff's attorneys rather than Plaintiff herself, pursuant to the doctor's request that Pearson not contact Plaintiff at all. (Dkt. 9-2 at ¶ 111; *see also* Exs. I, J.)

On August 14, 2020, Dr. Klenck again wrote to Rippolone, indicating that her client "experienced difficulties receiving help and support from you specifically. I was concerned that direct contact from you specifically negatively had impacted her mental health." (Ex. K, Aug. 14, 2020 letter from Dr. Klenck.) Plaintiff's psychologist also clarified that she was not a consultant "on this case." (*Id.*) While Plaintiff makes additional allegations about this letter, none of Tedesco's allegations actually appear in the letter (*Id.*; *see also* Dkt. 9-2 at ¶ 117.) At the time Pearson received the second letter from Dr. Klenck, Tedesco's employment had already been terminated.

### K.    Tedesco filed a second EEOC Charge in August 2020.

On August 28, 2020, Plaintiff filed a second EEOC charge, alleging that "Pearson violated the ADA and GINA when they harassed, discriminated against, and terminated her in retaliation for her disclosure of genetic information, requests for accommodation, and for her filing of the original EEOC Charge." (Dkt. 9-2 at ¶ 118, Ex. L, hereinafter the "August EEOC Charge.") In the August EEOC Charge, Tedesco indicated that she had been terminated because the company could not hold her position open, "despite the fact that I was on approved long-term disability through April 2022." (Ex. L). EEOC did not complete an investigation of either Charge, and on November 3, 2020, at Plaintiff's request, EEOC issued a Notice of Right to Sue for each Charge. (*Id*. at ¶ 120.) Both Notices are attached hereto as *in globo* Exhibit M.

**L.**     **Plaintiff's remaining assertions have no connection to her disability.**

To date, Plaintiff remains on paid LTD leave according to the terms of Pearson's third-party policy. On various occasions throughout her leave, Plaintiff notified Pearson that she was having billing issues with Pearson Education's third-party providers' management of her benefits. (*See*, *e.g.*, *id.* at ¶¶ 106-108, 116.) Plaintiff has alleged no specific facts to indicate that Pearson has in any way interfered with her claims or her benefits, which she continues to receive. Pearson is not responsible for the administrative processes of its benefits providers and does not have power or control over their claims, billing, and other processes. Plaintiff has also asserted that while she was out on FMLA leave, she discussed a home purchase with a lender and "learned that Pearson had misclassified her as having been unemployed since 2017," which is two years prior to her father's death. (*Id.* at ¶ 57.) She further alleged that Pearson "incorrectly reported [her] salary as a significantly lower amount" and "refused to fix" the issue. (*Id.* at ¶¶ 58, 59.) Plaintiff stated that this alleged misclassification resulted in her lender not approving any loans and dental coverage and bill payment disputes. (*Id.* at ¶¶ 60, 61.) Plaintiff did not link any of these allegations to any discrimination, or even allege that the individual who allegedly incorrectly reported income in 2017 and allegedly refused to fix it in 2019 had any awareness whatsoever of her father's suicide, or could have been motivated in any way by unlawful discrimination.

**M.**     **Plaintiff filed a Complaint on January 31, 2021.**

Plaintiff filed her Complaint in the United States District Court for the Eastern District of Louisiana on January 31, 2021. In her Complaint Plaintiff asserted the following causes of action against defendant: (i) violation of rights under GINA; (ii) violation of rights under the ADA.; (iii) unlawful retaliation under the ADA; (iv) violation of the LEDL; and (v) breach of implied covenant of good faith and fair dealing under Louisiana contract law. Even taking Plaintiff's allegations as true for the purpose of this motion, all of Plaintiff's claims against Defendant fail.

First, Plaintiff has not alleged any unlawful treatment on the basis of her disability in violation of the ADA or LEDL, and her termination was clearly issued only after she made plain that she was on an indefinite leave lasting for years. Second, Plaintiff has not alleged that Pearson was in possession of any of her private genetic information, let alone misused it in violation of the law. And finally, she has not alleged any contract whatsoever, let alone breach of the implied covenant of good faith and fair dealing. Tedesco suffered deeply with the loss of her father, and Pearson responded with compassion, understanding, and support. Plaintiff has not alleged any facts to support her claims of unlawful behavior, and her causes of action against Pearson should be dismissed in their entirety.

## III.    LEGAL STANDARD FOR A MOTION TO DISMISS

The legal sufficiency of a complaint is measured by whether it meets the requirements of Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). As restated by the United States Supreme Court, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does not require detailed factual allegations, but Plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Thus, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). To successfully "nudge[] claims across the line from conceivable to plausible," a complaint must contain facts "plausibly suggesting (not merely consistent with)" violations of the asserted causes of action. *Twombly*, 550 U.S. at 557, 570. When the facts pled do not raise a claim of entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the Court." *Id.* at 558.

Although this Court must accept Plaintiff's factual allegations as true, this requirement does not apply where, as here, "legal conclusion[s] [are] couched as factual allegation[s]." *Iqbal*, 556 U.S. at 678; *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) (noting that the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."). While "detailed factual allegations" are not necessary, the pleading must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Cent. Laborers' Pension* Fund, 556 U.S. at 678. And to survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must "provide the grounds of his entitlement to relief," including "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A complaint must contain plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In other words, there "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). While Plaintiff's Complaint is indeed extremely lengthy and contains many factual allegations, it lacks specific facts sufficient to support the elements of Plaintiff's claims. Therefore, Plaintiff has not met the pleading standard for any of her claims.

## IV.   ARGUMENT

### A.   Plaintiff was not a "qualified individual" as she has not worked for two years, and therefore cannot state a claim under the ADA.

Plaintiff cannot state a claim under the ADA because she was not a qualified individual, and therefore does not meet threshold requirements to state any claim under the ADA, including a

claim for discrimination based on disability, or a related failure to accommodate claim.[4] Even if Plaintiff could show that she was a qualified individual, she has not reported to work for two years and has no estimated date when she can return to work. Her extended, indefinite absence constitutes a legitimate, non-discriminatory reason for her termination, and her ADA claims fail.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Disability discrimination claims under the ADA follow the *McDonnell Douglas* burden-shifting framework—if and when a plaintiff can establish a *prima facie* case, the burden of production shifts to the employer to proffer a legitimate nondiscriminatory reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer meets its burden, the presumption of discrimination created by the *prima facie* case disappears, and the charging party is left with the ultimate burden of proving discrimination. More specifically, if the employer can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, the "mandatory inference of discrimination" created by the charging party's *prima facie* case "drops out of the picture" and the fact finder must decide whether the plaintiff has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993).

To allege a *prima facie* case of disability discrimination under the ADA, Plaintiff must allege facts to show (1) that she is disabled; (2) that she was qualified for the position, with or without reasonable accommodation; (3) that she suffered an adverse employment action; (4) that the employer knew or had reason to know of her disability; and (5) that the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination,

---

[4] The parameters of Plaintiff's second cause of action for "violation of rights under the Americans with Disabilities Act" are unclear. (*See* Dkt. 9-2 at ¶¶ 133-148.) Therefore, in an abundance of caution, Defendant addresses potential claims for both discrimination and failure-to-accommodate.

for example that she was replaced by a non-disabled employee. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003).

Plaintiff may also be alleging discrimination on the basis of a failure to accommodate her disability. The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). An employer may also violate the ADA if it fails to make these accommodations, unless they impose an "undue hardship." *Id.* In order allege a *prima facie* failure-to-accommodate claim, a plaintiff must allege facts to show "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

An employer on notice of a disability must engage in the "interactive process" with the employee "with the goal of finding an appropriate accommodation for the limitation." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). However, the employee must also participate in the interactive process in good faith, and where a breakdown in discussion "is traceable to the employee," the employer has not violated the ADA. *Griffin v. UPS*, 661 F.3d 216, 224 (5th Cir. 2011); *see also Delaval*, 824 F. 3d at 482 (affirming district court's grant of summary judgment in employer's favor when employee refused to engage in interactive process). Further, an employee is entitled to a reasonable accommodation but not any accommodation she chooses. The Fifth Circuit recently upheld a district court's grant of summary judgment in an employer's favor when an employee made inflexible demands for a specific accommodation and then left work when she did not receive them. *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 431 (5th Cir. 2018). As the Fifth Circuit stated, "[n]either the ADA nor the 2008 amendments

to the ADA permits an employee to leave work early and then sue her employer for being unreasonable." *Id.*

> **1. Plaintiff was not a qualified employee because she could not perform the essential functions of her job.**

Here, Plaintiff's ADA disability discrimination/failure to accommodate claim fails because she cannot show that she was a "qualified individual," and therefore cannot establish a *prima facie* case of discrimination. As previously stated, to be protected by the ADA, one must be a "qualified individual," who can perform the essential functions of the employment position, either with or without reasonable accommodation. 42 U.S.C. § 12111(8). Attendance at work, the most basic element of an employee's duties, is an essential element of all jobs. *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (citing cases). Further, "[i]ndefinite leave is not a reasonable accommodation." *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012). Plaintiff has not reported to work with Pearson and has been on continuous paid disability leave since October 2019. Plaintiff's own treating provider notified Pearson on July 31, 2020, after Plaintiff had been on continuous leave for almost a year, that Plaintiff "does not have a return to work date at this time," and stated that Pearson was not permitted to "contact my client in the future for any reason, taking into account her mental health and disability status." (Ex. I.) Plaintiff also contacted Pearson directly and notified them that she would be on leave until at least April 28, 2022. (Ex. H.)

Under these circumstances, Plaintiff cannot show that she was a "qualified individual" under the statute because could not perform the essential function of attendance at work. *See Weber v. BNSF Ry. Co.*, No. 20-10295, 2021 U.S. App. LEXIS 5547, at *11 (5th Cir. Feb. 24, 2021) ("there is a general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs."); *Credeur v. Louisiana*, 860 F.3d 785, 793 (5th Cir. 2017)

(Noting that attendance is an essential function of most jobs, quoting EEOC Fact Sheet, Work At Home/Telework as a Reasonable Accommodation (Oct. 27, 2005), http://www.eeoc.gov/facts/telework.html.)). Therefore, under Fifth Circuit law, Plaintiff cannot state a *prima facie* case of ADA discrimination/failure to reasonably accommodate and her claim fails because she was not a qualified individual. *Id*.

### 2.   Plaintiff refused to engage in the interactive process.

Plaintiff's failure-to-accommodate claim fails for the additional reason that Pearson reached out to her to engage in the interactive process, and she responded through an intermediary that Pearson was not to contact her again. (Exs. F, G.) The interactive process was therefore unilaterally shut down by Plaintiff herself, with no possibility for Pearson to continue its inquiry. In such an instance, Tedesco cannot show that Pearson violated the ADA, and her claim fails. *Delaval*, 824 F.3d at 482 (affirming district court's grant of summary judgment in employer's favor when employee refused to engage in interactive process.); *Trautman*, 756 F. App'x at 431.

### 3.   Plaintiff's ADA retaliation claim fails because her termination was based on her multi-year leave, which Pearson was not required to accommodate.

Plaintiff alleged that Pearson terminated her employment in retaliation for requesting an accommodation and for taking leave. (Dkt. 9-2 at ¶ 154.) To establish a *prima facie* case of retaliation under the ADA, Plaintiff must show that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454 (citation omitted). "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie case* of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (citation omitted). That said, the "cases that accept mere temporal proximity between an employer's knowledge of

protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). The Fifth Circuit has noted that "[w]hile a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence." *Aguillard v. La. College*, 824 F. App'x 248, 251 (5th Cir. 2020) (citing *Feist*, 730 F.3d at 454).

Plaintiff first notified Pearson of her father's suicide in January of 2019, 20 months before her termination on August 5, 2020.  Plaintiff first requested and received FMLA leave on April 7, 2019, which was 16 months before her termination. Plaintiff's second medical leave began in October 2019, which was 10 months before her termination. (Dkt. 9-2 at ¶¶ 26, 51, 91, 154.) All of these gaps in time well exceed the 5-month gap that the Fifth Circuit described as "too long absent other evidence." *Aguillard*, 824 F. App'x at 251.

The event that *did* occur in close proximity to Plaintiff's termination was Pearson's request on July 23, 2020 for her to engage in the interactive process and discuss potential accommodations and a return to work date, and her notification a week later that she would be out until April 2022, and that Pearson could not contact her again. (Exs. F, G, H.) There is a strong inference therefore that Pearson's termination of Plaintiff was based on her inability to return to work for multiple years, and *not* for any unlawful reason. Plaintiff has not stated any facts sufficient to overcome that strong inference and establish a causal link between her alleged protected activity and termination, and Plaintiff therefore cannot state a *prima facie* case of ADA retaliation.

### 4.  Plaintiff's continuous leave and lack of return date were legitimate, non-discriminatory reasons for her termination.

Even if Plaintiff could establish a *prima facie* case of discrimination or retaliation, which Pearson disputes for all the reasons discussed above, Pearson proffered legitimate, non-

18

discriminatory reasons for its decision to terminate her employment. Plaintiff's last working day with Pearson was October 27, 2019, and she has been out on disability leave from that date to the present. (*See* Ex. K.) As the Fifth Circuit has noted, "[i]ndefinite leave is not a reasonable accommodation" and the question of whether an individual is "qualified" under the ADA must focus on "whether [s]he was qualified at the time h[er] position was eliminated." *Amsel*, 464 F. App'x at 400. In August 2020, Plaintiff had not been to work in almost a year, and she gave Pearson no indication of when she would be cleared to return to work. Taking those points into account, Pearson terminated Plaintiff's employment for the legitimate, non-discriminatory reason that Plaintiff did not return to work after being out on continuous leave for over ten months that could extend for another two years, and after her physician informed Pearson that Plaintiff's return to work date was undefined. Accordingly, Defendant has given a legitimate, non-discriminatory reason for Plaintiff's termination, and her claims under the ADA must be dismissed pursuant to Rule 12(b)(6).

### B.      Plaintiff's LEDL claims also fail on the same grounds.

For the same reasons that Plaintiff's ADA discrimination and retaliation claims fail, her range of potential LEDL claims also fail. "Louisiana's disability discrimination protections are based on the ADA, and the Court's analyses under the LEDL and the ADA are the same."[5] Accordingly, Plaintiff's claims under the LEDL fail for the same reasons her ADA claims fail.

---

[5] *Sutherland v. Edison Chouest Offshore, Inc.*, No. 19-cv-414, 2020 U.S. Dist. LEXIS 165158, at **39-40 (E.D. La. Sept. 10, 2020) (citing *Barton v. Checkers Drive-In Rests., Inc.*, No. 11-186, 2011 U.S. Dist. LEXIS 32251, at **7-8 (E.D. La. March 28, 2011) ("Because Louisiana's statute is based on the ADA, the result of the court's analysis under either statute must, necessarily, be the same.")); *see also Tribble v. Ouachita Par. Police Jury*, 939 F. Supp. 2d 626, 629-30 (W.D. La. 2013) ("The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result."); *Lee v. Constar, Inc.*, 921 So.2d 1240, 1246 (La. App. 5th Cir. 2006) ("Louisiana courts look to federal jurisprudence to interpret Louisiana discrimination laws as they are derived in part from the federal law.") (citations omitted).

### C.    Pearson is not in possession of any of Tedesco's private genetic information, and her claims under GINA fail.

Plaintiff alleged that "Pearson management improperly acquired [Plaintiff's] genetic information," but she has never clarified what actual private genetic information she refers to. (Dkt. 9-2 at ¶ 131.) Plaintiff has never shared – and Pearson has never requested – any private genetic information. There are no allegations that Pearson required Tedesco to undergo genetic testing (it did not), improperly acquired results of genetic testing done by Tedesco (it did not) or purchased the results of genetic testing (it certainly did not). Under the law, an employer does not violate GINA through "the use, acquisition, or disclosure of medical information *that is not genetic information* about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis."[6] Plaintiff's claims under GINA fail as a matter of law for failure to make any allegations regarding any private genetic information protected by the statute.

### D.    Plaintiff was an at-will employee and can show no contract to support a claim for violation of the implied covenant of good faith and fair dealing.

Plaintiff asserts that Pearson violated an "implied covenant of good faith and fair dealing under Louisiana law" when it terminated her employment. (Dkt. 9-2 at ¶ 168.) While a covenant of good faith and fair dealing is implied in every contract in Louisiana, a contract is required for the implication to apply.[7] Plaintiff conclusorily states that she had an "employment contract," but has provided no specific allegation to support her assertion. Pearson cannot attach the referenced

---

[6] *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (rejecting plaintiff's argument that his employer discriminated against him in violation of GINA by requiring him to participate in a mandatory wellness program because there was no evidence that his genetic information was involved and the plaintiff "ignore[d] the statutory distinction between 'medical information' and 'genetic information.'").

[7] *See Adams v. Autozoners, Inc.*, No. 98-cv-2336, 1999 U.S. Dist. LEXIS 14999, at *20 (E.D. La. Sept. 22, 1999) (noting that because the company's employee handbook did not create a contract between the plaintiff and the defendant, no covenant of good faith and fair dealing could be implied); *Lee v. Entergy Operations*, No. 93-0038, 1994 U.S. Dist. LEXIS 13510, at *9 (E.D. La. Sept. 19, 1994) ("As there is no contract, no covenant of good faith and fair dealing can be implied.").

employment contract because none exists, as Plaintiff was an at-will employee. Accordingly, Plaintiff cannot establish that Pearson breached an implied covenant of good faith and fair dealing by terminating her employment, and her fifth cause of action must be dismissed with prejudice.

## V.    CONCLUSION

Plaintiff's Complaint fails to state sufficient factual support for the five causes of action asserted. Therefore, her claims should be dismissed pursuant to Rule 12(b)(6). For the foregoing reasons, defendant respectfully requests that the Court grant this Motion to Dismiss.

**JACKSON LEWIS P.C.**

*s/ Susan Fahey Desmond*
SUSAN FAHEY DESMOND (T.A.)
La. Bar Roll No. 25380
E-mail: Susan.Desmond@jacksonlewis.com
GILLIAN G. W. EGAN
La. Bar Roll No. 36842
E-mail: Gillian.Egan@jacksonlewis.com
RACHEL T. GULOTTA
La. Bar Roll No. 37706
E-mail: Rachel.Gulotta@jacksonlewis.com
JACKSON LEWIS P. C.
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Telephone:    (504) 208-1755
Facsimile:    (504) 208-1759

COUNSEL FOR DEFENDANT,
Pearson Education, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send notice of such filings to all counsel of record.

*s/ Susan Fahey Desmond*